IN THE OREGON TAX COURT
REGULAR DIVISION

Chester R. YOUNGBLOOD
and Barbara R. Youngblood,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

MALHEUR COUNTY,
*Intervenor-Defendant.*

(TC 4545)

Chester R. Youngblood argued the cause for Plaintiffs (taxpayers) *pro se*.

Wendy Sanderson, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Stephanie J. Williams, Malheur County Counsel, Vale, argued the cause for Intervenor (the county).

Decision for Defendant and Intervenor rendered February 12, 2002.

**HENRY C. BREITHAUPT, Judge.**

This case presents the question of whether land used to operate a hunting preserve qualifies for special assessment under Oregon statutes providing property tax benefits to land employed in "farm uses."

## FACTS

The following facts were stipulated. Since 1993, Plaintiffs (taxpayers) have owned 77.37 acres of land in an exclusive farm use (EFU) zone in Malheur County, which for purposes of ORS chapter 215[1] is a nonmarginal land county. *See* ORS 215.283. Two farm dwellings and certain farm structures are sited on approximately 5.75 acres of the property. On that parcel, taxpayers annually raise approximately 5,000 pheasant and other fowl, which are housed in flight pens. Taxpayers sell some of the birds directly to consumers and release the rest onto the remaining 71.62 acres (the subject parcel) to be hunted.

In 1995, taxpayers began using the subject parcel to operate a game bird hunting preserve. Over the years, taxpayers have also used the subject parcel to grow hay and leased portions to pasture cows. However, for the years 1998 to 2000, taxpayers did not cut grass hay, plant pasture grass, or lease any portion of the subject parcel. Taxpayers did plant "no-till" grain on the property and did irrigate the pasture grass located on the property during 1999. The grain and grass serve as food for the released birds.

No county land use approval or permit has been obtained for operation of a hunting preserve on the property. However, taxpayers have obtained a propagation license and a private shooting preserve license from the Oregon Department of Fish and Wildlife (ODFW), pursuant to which the

---

[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) are to 1999.

birds are released on the subject parcel between August 1 and March 31. Hunters are invited onto the property and pay for the privilege of hunting at $14 per pheasant and $10 per chukar, or in some cases a fixed fee.

During 1999, one application of herbicide was made to approximately 10 acres of the subject parcel for the abatement of the noxious whitetop weed. It is not necessary to allow land to lie fallow following an application of the herbicide before livestock can graze or grasses can be planted. The use of the herbicide does, however, require a cessation of planting certain types of grain that taxpayers intended to use as cover and feed for birds that were released on the property in connection with the operation of the hunting preserve.

## ISSUE

Does the 71.62 acre subject parcel qualify for farm-use special assessment for the 2000-2001 tax year?

## ANALYSIS

Intervenor-Defendant Malheur County (the county) disqualified the subject parcel for the 2000-2001 tax year based on the status and use of the land during the 1999 calendar year. *See* OAR 150-308A.062(2). Prior to 1999, the property was used for qualifying farm-use purposes and was specially assessed. A suspension of active farm-use operations would not, in all cases, be fatal to qualification. For example, agricultural land may qualify for property tax benefits where it is allowed to lie fallow for one year as a "normal and regular requirement of good agricultural husbandry." ORS 308A.056(3)(b). Taxpayers have suggested that the 1999 application of herbicide to approximately 10 acres of the property could serve as a basis for explaining a lack of other activity on the property in 1999. However, that argument does not prevail given the fact that the use of the herbicide did not prevent agricultural uses of the land such as those previously conducted by taxpayers, for example, grazing. In addition, the weed treatment affected only 10 of the 71.62 acres in question.

Indeed, taxpayers' arguments are not founded on a theory that the required farm-use or agricultural activity did not occur because of the herbicide. Rather, the main thrust of

taxpayers' arguments is based on the proposition that operation of a hunting preserve itself qualifies as agricultural activity. During the hearing on this matter, taxpayers specifically argued that the pheasants and chukars that are hunted on the property constitute bird species, the propagation, cultivation, maintenance, or harvest of which constitutes farm use under ORS 308A.056(1)(e). Taxpayers argue that the hunting in which they permit licensees to engage constitutes "harvesting" for purposes of the statute. Taxpayers also reason that because they have licenses from ODFW, the rules of which are referred to in ORS 308A.056(1)(e), the hunting preserve necessarily qualifies under that statute as being engaged in an agricultural use.

■    The fundamental issue in this case is whether the statutory provisions, read as a whole, permit a conclusion that land operated as a private hunting preserve is considered employed in farm use for assessment purposes. It is the court's duty to discern the intent of the legislature in enacting ORS 308A.056(1)(e), which begins with a study of its text and context. ORS 174.020(1)(a) (2001);[2] *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). That subsection explicitly makes the ODFW rules applicable to the propagation, cultivation, maintenance, and harvest of aquatic, bird, and animal species. However, a requirement that the ODFW rules be followed when engaging in those specific operations does not mean that all operations governed by the ODFW are farm-use activities under ORS 308A.056(1)(e).

Prior to 1999, the farm-use assessment provisions now found in chapter 308A were set forth in ORS 308.345 to 308.407, which referred to ORS 215.203[3] for the definitions of "farm use." In 1999, the legislature created ORS chapter 308A for land-use special assessments such as farm use and included in that chapter the definition of "farm use."

Taxpayers heavily rely on the fact that the rules relating to farm use are different as between the zoning laws

---

[2] The 2001 amendments to ORS 174.020 became effective June 18, 2001, and apply to all actions commenced on or after that date. Or Laws 2001, ch 438.

[3] ORS 215.203 to 215.306 governs the establishment and uses allowed in EFU zones.

and the tax laws, arguing that even though hunting preserves are described as nonfarm uses under the zoning laws, they may nonetheless be considered "farm use" for purposes of ORS chapter 308A. *See generally* ORS 215.283(2)(c). That argument would have been unsuccessful prior to 1999. For those years, this court held that conditional uses permitted within an EFU zone are not farm uses for purpose of special assessment under the tax statutes. *See, e.g., Kang v. Dept. of Rev.*, 12 OTR 407 (1993).

■      Taxpayers' argument can prevail after the 1999 legislative changes only if the court concludes that the 1999 Legislative Assembly intended to substantially alter the farm and nonfarm use provisions in the property tax statutes from those found in the zoning statutes. An inspection of the statutory provisions of ORS chapters 308A and 215 and an examination of the history of the 1999 legislative session make it abundantly clear that in rearranging the presentation of the statutory materials, the legislature did not intend to make any substantive change with respect to what constitutes farm use. To the contrary, the legislative history indicates that the legislature operated with an understanding that it was reorganizing only the farm-use provisions contained in ORS chapter 215. In particular, it is clear that the definition of "farm use," while separately stated in the tax provisions, was intended to be "identical to the definition in the land use statutes."[4] Minutes, Senate Revenue Committee, SB 248, Mar 15, 1999, Ex 5 (Lizbeth Martin-Mahar, Economist, Legislative Revenue Office).

■ ■      That finding is supported by a consideration of whether hunting preserves are statutorily treated as farm or nonfarm use. The zoning statutes designate hunting preserves as nonfarm uses. ORS 215.283(2)(c) (defining nonfarm uses within nonmarginal land EFUs). The tax statutes do not

---

[4] Legislative history also provides some indication that the legislature stated definitions separately in chapter 308A so that later changes in the zoning definitions would not automatically affect tax provisions. Minutes, House Revenue Committee, SB 248, May 6, 1999, Ex 1 (Lizbeth Martin-Mahar, Economist, Legislative Revenue Office). While that approach allows for the possibility that zoning and tax definitions could diverge after 1999, the legislative history shows they were not divergent in 1999.

identify specific nonfarm uses; however, contextual provisions of ORS chapter 308A indicate that a hunting preserve is nonfarm use of land. For example, ORS 308A.068 provides that non-EFU land used exclusively for farm uses qualifies for farm-use special assessment, but that benefit cannot be received if the land is being leased for nonfarm use.[5] However, if the leased nonfarm use is for "hunting, fishing, camping, or other recreational use" and such use "**does not interfere with the farm use** of the farmland," the land may receive farm-use special assessment. ORS 308A.068(2)(b) (emphasis added). In other words, the land is specially assessed based on its farm use and the existence of a limited nonfarm use such as hunting is ignored. The conclusion is clear. Hunting is not a "farm use." If it were, no statutory rule reconciling limited hunting with farm uses would be needed.

Lastly, although "harvesting," considered in some contexts, might well include "hunting," that interpretation cannot overcome the clear statutory indications that land used as a private hunting preserve is not employed in farm use for assessment purposes. Taxpayers are not using the subject 71.62 acre parcel for farm use, and disqualification of that parcel was proper. The county's motion for summary judgment is granted, Now, therefore,

IT IS ORDERED that Intervenor Malheur County's Motion for Summary Judgment is granted. Costs to neither party.

---

[5] For the specific and additional qualification requirements of non-EFU land, *see* ORS 308A.068.