506            November 10, 2014            No. 64

IN THE OREGON TAX COURT
REGULAR DIVISION

Leroy A. WEHDE
and Nancy C. Wehde,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5147)

Plaintiffs (taxpayers) appealed from a Magistrate Division decision as to the disqualification of a portion of their property from farm use special assessment. The Jackson County Assessor (the county) disqualified 18.97 acres of taxpayers' 19.97 acres of pasture from farm use special assessment for the tax year. Taxpayers leased the land to a third party who raised honeybees for honeybee pasturing, mating, and hive production. Defendant Department of Revenue (the department) argued that the county was justified in disqualifying part of the land by its consideration of the enumerated factors contained in OAR 150-308A.056(3)(b). Taxpayers argued that the rule did not apply to lands in an Exclusive Farm Use (EFU) zone because beekeeping was already an "accepted farming practice" pursuant to ORS 308A.056 and that OAR 150-308A.056 could not apply to land in an EFU zone because it exceeded the department's rulemaking authority under ORS 308A.059. The department conceded that ORS 308A.059 did not give it that authority as to EFU zones, but it contended that it was authorized under ORS 305.100 to further interpret "farm use." Following trial, the court found that all of the acreage at issue was in fact used by the bees and that the disqualified acreage was currently employed. The court further found taxpayers' uncontradicted evidence to be convincing and that taxpayers had satisfied their burden of showing that the third party's use of the land met the current employment requirement of the statute, therefore the land was used exclusively for their qualifying farm use.

Trial was held August 27, 2013, in the courtroom of the Oregon Tax Court, Salem.

Lynn R. Stafford, Attorney at Law, Portland, argued the cause for Plaintiffs (taxpayers).

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Decision for Plaintiffs rendered November 10, 2014.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This case is before the court for decision after trial. The tax year is 2011-12. Plaintiffs (taxpayers) appealed a decision in the Magistrate Division in favor of Defendant Department of Revenue (the department).

## II.   FACTS

Taxpayers own 39.57 acres of land in Jackson County in an exclusive farm use (EFU) zone. Of this total, 19.60 acres constitute a home site and woodlot not at issue in this case. The Jackson County assessor[1] (the county) disqualified 18.97 acres (the disqualified acreage) of the remaining 19.97 acres (pastureland) from farm use special assessment for the tax year. The county allowed one acre on the western edge of the pastureland (the bee hive acre) to remain in special assessment.

Taxpayers leased the entire property to John Jacob, d/b/a Old Sol Enterprises (Old Sol), for honeybee pasturing, mating, and hive production. Old Sol Enterprises intends to, and does, earn a profit from its bee-related activities. Taxpayers also reside on part of the property, as does taxpayers' daughter, who keeps some hobby animals on the property. The county based its allowance on the estimate that Jacob kept the bee hives on and used roads totaling one acre. Following the testimony at trial showing that additional land was used at times when hives were moved around the property, the county conceded an additional one to two acres.

Taxpayers have leased the pasture to Jacob since at least 2008. Prior to 2008, the pastureland was leased to other tenants who grew hay on it. Although exact dates are not clear from the record, Jacob's bee-related activities and other tenants' hay-raising activities coincided at some point, but not in the year at issue.

Jacob's bees foraged across the entire subject property, as evidenced by the types of pollen the bees collected.

---

[1] The assessor who initially disqualified the acreage in question, John Cacka, retired before this litigation arose. The current assessor, Lorrie Williams, appeared for the county in the Magistrate Division and in the Regular Division. *Wehde v. Jackson County Assessor*, TC-MD No 111096C.

In addition, breeding and certain hive management activity (dividing and consolidating hives) took place on other areas of the pasture beyond the bee hive acre. According to Dewey Carom, a bee expert, bees typically forage in a radius of up to 8,000 acres from their hive, and they can forage in an area as far a radius of two to seven miles from their hive.

## III.  ISSUE

The issue is whether the disqualified acreage on the subject property qualifies for farm use special assessment.

## IV.  ANALYSIS

The statutory farm use special assessment qualification provisions treat land differently depending on whether it is located inside or outside of an EFU zone. Land within an EFU zone qualifies for farm use special assessment if it "is used exclusively for farm use" so long as it is not disqualified by another provision of law. ORS 308A.062(1).[2] Land in a nonexclusive farm use (non-EFU) zone qualifies for special assessment if it is used exclusively for farm use, has been so used for the preceding two years, meets certain income requirements, and fulfills application requirements. ORS 308A.068(1). As noted above, the land at issue is located within an EFU zone.

"Farm use" is defined in relevant part in the statute as "the current employment of land for the primary purpose of obtaining a profit in money by: *** (b) Feeding, breeding, managing or selling livestock, poultry, fur-bearing animals or honeybees or the produce thereof." ORS 308A.056(1)(b).

In ORS 308A.059, the legislature specifically directed the department to enact a rule further defining farm use for lands in non-EFU zones:

"(1)  The Department of Revenue shall provide by rule for a more detailed definition of farm use, consistent with the general definition in ORS 308A.056, to be used by county assessors in determining qualification for special assessment under ORS 308A.068. The rules shall not be designed to exclude from the special assessment those

_____
  [2] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

lands that are in farm use as defined in ORS 308A.056 for which tax relief is intended.[3]

"(2)   In determining qualification for special assessment under ORS 308A.068, the county assessor shall consider the use of the land by the owner, renter or operator thereof together with any other lands that are a part of one farming unit being operated by the owner, renter or operator."

The department enacted a rule pursuant to the legislature's directive. Currently contained in OAR 150-308A.056, the rule in relevant part provides:

"(1)   This rule applies to land in both exclusive farm use zones and non-exclusive farm use zones that may qualify for special assessment under ORS 308A.062 or 308A.068.

"* * * * *

"(3)(a)   The law seeks to give the benefits of ORS 308A.062 and 308A.068 to that farmland which is operated primarily for the purpose of obtaining a profit in money.

"(b)   The assessor must consider all requirements of ORS 308A.056 and be convinced that the land is used in a manner that is reasonably designed and intended to obtain a profit in money by accepted farming practices. If the primary purpose of the current use of the land is not to obtain a profit in money, the land is not farm use land. This primary purpose of the land must be ascertained from overt acts. All pertinent facts will be considered to determine if property qualifies as farm use land. Pertinent information may include:

"(A)   Present and past use of the land.

"(B)   If the farming operation is conducted by another for the owner, the provisions of the oral or written agreement including the term, area let, consideration, and provisions for termination.

---

[3] The second sentence of what is now ORS 308A.059(1), as originally enacted in former ORS 308.380, provided that "[s]uch regulations shall be designed to exclude from the special assessment those lands which are not bona fide farms for which the tax relief is intended." ORS 308.380 (1965); *see* Or Laws 1963, ch 577, § 7. The language was amended in 1969 to substantially the same language as it contains today. Or Laws 1969, ch 512, § 2.

"(C)   Participation in governmental or private agricultural programs or activities.

"(D)   Productivity of the land.

"(E)   Number of livestock or poultry (by type).

"(F)   Amount of last harvest of each crop.

"(G)   Gross income from crops, livestock, and livestock products.

"(H)   Uses of the land for other than farming operation.

"(I)   Ratio of farm or agricultural use as against other uses of the land.

"* * * * *

"(5)   * * * [A]ny part of a farm unit that is employed in or supports a non-farm use does not qualify for special assessment."

Prior to 2009, subsections (3) and (5) were numbered OAR 150-308A.059(2) and (3) respectively, contained substantially the same language, and applied only to lands in non-EFU zones.[4] In 2008, the department repealed that provision and incorporated it into existing OAR 150-308A.056 for the express purpose of making the provision apply to property within both EFU and non-EFU zones. REV 17-2008 (Dec 17, 2008) ("The language * * * is specific to lands in non-exclusive farm use zones, but the criteria need to apply to both land zoned for exclusive and non-exclusive farm use.").

The department asserts that the county was justified in disqualifying part of the land by its consideration of the enumerated factors contained in OAR 150-308A.056(3)(b). Taxpayers argue that the rule does not apply to lands in an EFU zone because beekeeping is already an "accepted farming practice" pursuant to ORS 308A.056,[5] and that OAR 150-308A.056 *cannot* apply to land in an EFU zone

_____

[4] Former OAR 150-308A.059 was renumbered from 150-308.380-(A) in 2000, and from 150-308.380 in 1988. REV 11-2000; RD 8-1988.  Although amended many times, the rule has been in place since 1963, and until 2009 it corresponded with ORS 308A.059 or its predecessor, ORS 308.380.

[5] Taxpayers cite ORS 308A.059, but the court assumes that they mean ORS 308A.056, which lists beekeeping as a qualifying form of farm use.

because it exceeds the department's rulemaking authority under ORS 308A.059. The department concedes that ORS 308A.059 does not give it that authority as to EFU zones, but it contends that it is authorized under ORS 305.100 to further interpret "farm use." Neither party further addresses the department's authority under ORS 305.100 in any helpful way.[6]

Rulemaking authority can be either legislative or interpretive in nature. *See, e.g.*, *Comcast Corp. v. Dept. of Rev.*, 20 OTR 319, 326 n 6 (2011), *rev'd on other grounds*, 356 Or 282, 337 P3d 768 (2014). Where a rule relies solely on interpretive authority, it must be consistent with the statute it purports to implement. *See Sherwin-Williams Co. v. Dept. of Rev.*, 14 OTR 384 (1998). Because the department relies only upon its general rulemaking authority, it has abandoned any claim to what appears to be legislative rulemaking authority under ORS 308A.059. That the department initially promulgated the rule's predecessor under a direct grant from the legislature, arguably giving the prior rule legislative authority, is further support that the current regulation is interpretive and must be consistent with the statute and the legislature's intent.[7] Thus, the issue is whether the department's rule is consistent with ORS 308A.056.

As mentioned above, the statute expressly provides that EFU zoned land qualifies for special assessment if it "is used exclusively for farm use." ORS 308A.062(1). "Farm use" is defined as "the current employment of land for the primary purpose of obtaining a profit in money by * * * [f]eeding, breeding, managing or selling * * * honeybees or

---

[6] According to taxpayers, the legislature adopted ORS 308A.059 solely to give the department rulemaking authority to further define non-EFU zone farm use. In their view, the legislature would not have enacted this rule unless it thought the department did not already have such power. However, taxpayers do not address whether the department can enact such a rule pursuant to its general rulemaking authority under ORS 305.100.

[7] Interestingly, the Oregon Attorney General in 1990 opined that the grant of authority under ORS 308.380, the predecessor to ORS 308A.059, is "narrower than initially might appear." Or Op Atty Gen OP-6390, 1990 WL 519224, at *9 (Or AG Oct 11, 1990). The legislature's limitation on the department's rulemaking authority in this section "negates any possible inference that the legislature delegated broad policymaking authority on this subject to DOR[,]" making the department's rulemaking authority under current ORS 308A.059 "essentially interpretive." *Id.*

the produce thereof." ORS 308A.056(1)(b). The department's ability to make rules is subject to the qualification that any such rules "shall not be designed to exclude" lands that meet the definition of farm use under ORS 308A.056(1)(b). ORS 308A.059(1).

The rule lays out nine pieces of "pertinent information" that the assessor may use to determine "*if property qualifies as farm use land*." OAR 150-308A.056(3)(b) (emphasis added). However, ORS 308.056 is dispositive on the issue of what constitutes farm use for land in EFU zones: it states that farm use "*means * * * the current employment of land for the primary purpose of obtaining a profit in money by * * * [f]eeding, breeding, managing or selling * * * honeybees[.]*" (Emphasis added.) Once a property in an EFU zone qualifies as farm use under the statutory definition, it qualifies for special assessment so long as that use is "exclusive[]." ORS 308A.062(1). Thus, farm use is fully defined in the statute, and there is no room for further interpretation.[8]

To be sure, the statute from which the department originally enacted its rule instructed the department to further define farm use, but only in the context of land in non-EFU zones. As this court noted before the rule was amended, the fact that the rule addressed only non-EFU lands "reflect[s] qualitative differences between EFU and non-EFU land. Land in an EFU zone has no minimum income requirements and no past performance or past income requirements." *Everhart v. Dept. of Rev.*, 15 OTR 76, 79 n 2 (1999).

The legislature's directive that any such additional definition should not interfere with the general definition further solidifies this point. Any definition that, for example,

---

[8] The court notes that the rule also discusses that the county must "be convinced that the land is used in a manner that is reasonably designed and intended to obtain a profit in money by accepted farming practices" and to determine a taxpayer's "primary purpose." OAR 150-308A.056(3)(b). The court does not need to decide whether the department could issue interpretive regulations regarding what constitutes a taxpayer's "primary purpose of obtaining a profit in money" because the rule as currently written does not purport to do that. Rather, it purports to define farm use, something the statute has done completely for EFU zoned land.

looked to past performance to determine current use could remove land otherwise qualifying as farm use under the general definition of out-of-farm use under the rule, something the statute does not allow. This is precisely what the rule as applied to EFU land does. *See* OAR 150-308A.056(3)(b)(A).[9] It is clear then that OAR 150-308A.056(3)(b) cannot apply to lands in EFU zones.[10] This does not end the inquiry, however.

In order to qualify as farm use under the statute, the land must be (1) currently employed; (2) such employment must be "for the primary purpose of obtaining a profit in money'" and (3) the use must qualify as farm use under the statute. ORS 308A.056; *see Everhart*, 15 OTR at 79. Additionally, such use must be "exclusive[]" in order to qualify for special assessment. ORS 308A.062. Taxpayers bear the burden of proof to show by a preponderance of the evidence that they qualify for special assessment. *See* ORS 305.427; *Beddoe v. Dept. of Rev.*, 8 OTR 186, 191 (1979).

The requirement of current employment has been described by this court as one that "suggests an active, purposeful, directed use of the land." *Everhart*, 15 OTR at 79. The department contends that the property is "left in its natural state," thus it is not *employed* for farm use. However, taxpayers made a strong showing at trial that the plant varieties found throughout taxpayers' land are particularly beneficial to the bees' foraging needs.

---

[9] There are multiple inconsistencies in the rule, as taxpayers noted, three of which pertain to the rule's enumerated factors: (1) its consideration of past use ignores the statute's "current employment" language; (2) the statute does not require consideration of participation in a governmental farm program, whereas the rule permits it; and (3) productivity of the land is not required by the statute, but is by the rule. (Ptfs' Reply at 6-8.) The court finds these arguments persuasive. Taxpayers' argument that the rule's allowance of partial disqualifications is contrary to the statute, however, is inconsistent with the case law. *See Spooner v. Dept. of Rev.*, 4 OTR 66, 68 (1970) (partial disqualification permitted); *Taylor v. Dept. of Rev.*, 6 OTR 496, 501 (1976) (same).

[10] Because the court has found that the rule exceeds the department's rulemaking authority as to EFU zones, it is unnecessary to consider taxpayer's alternative arguments that their land qualifies under the rule. This is not only unnecessary, but it would be problematic to apply a rule which, at least in part, is completely inconsistent with the statutory scheme.

The department also argues that the land was underutilized, citing *Beddoe v. Dept. of Rev.*, 8 OTR 186, 189 (1979) ("The legislature did not intend to permit farm use special assessment 'to those who mechanically follow some statutory minimum.'"). First, this court has distinguished *Beddoe*, which dealt with non-EFU land, on the ground that its reasoning does not apply with equal force to EFU land. *See Everhart*, 15 OTR at 85. Second, testimony at trial established that, had taxpayers grown other crops on the property with pesticides, the subject property would have been less beneficial to the bees because part of the subject property's appeal was its lack of pesticides to help cleanse the bees of pesticides. Even if an underutilization argument could prevail as to EFU land, the court finds that it does not here.

Finally, the department argues that not all of the subject property was currently employed for use in a bee-keeping operation, so the county was justified in disqualifying a portion of it. A taxpayer is not necessarily entitled to special assessment for the entire property where a relatively small portion is devoted to a particular farm use. *See, e.g.*, *Spooner v. Dept. of Rev.*, 4 OTR 66, 68 (1970) (only 30 out of 125 acres used for grazing of 28 sheep qualified for special assessment). However, the evidence at trial shows that all of the acreage at issue was in fact used by the bees. Taxpayers' expert testified at trial that bees will begin foraging immediately around their hives, and they typically will forage within an 8,000 acre radius from the hive, although they can forage in an area as far as two to seven miles from their hive. Ultimately, the fact that bees will forage beyond the subject property is of no moment; the inquiry concerns only whether the disqualified acreage was currently employed. The court finds taxpayers' uncontradicted evidence to be convincing and that taxpayers therefore satisfied their burden of showing that Old Sol's use met the current employment requirement.

The second requirement, profit motive, is determined by the "intent of the user of the land *** induced from objective observable conduct." *Everhart*, 15 OTR at 79-80. This court has defined "profit" for purposes of the special assessment as "gain, or income greater than ***

expenses[.]" *Id.* at 81. Profit may be measured by a lessee's use. *Id.*

The department argues that because taxpayers' daughter allowed her animals to graze on the land without a profit purpose, the land is used for a nonfarm use. However, the statute requires only that the user's *primary* purpose be to obtain profit; the legislature "recognizes that there may be other subordinate uses that are not profit motivated." *Everhart*, 15 OTR at 81. John Jacob testified that Old Sol intends to, and does, earn a profit from its activities on the land. Furthermore, Old Sol has leased the entire property. The court finds that the primary purpose of Old Sol's use is to obtain a profit, and the use by taxpayers' daughter of the land for grazing a few hobby animals is a subordinate one. Therefore, the second requirement is met.

The third requirement is that the use be a qualifying farm use under the statute. The statute provides that use of land for "[f]eeding, breeding, managing or selling *** honeybees" qualifies as farm use. ORS 308A.056(1)(b). Here, there is no question that Old Sol uses the property to feed, breed, manage, or sell honeybees.

The department argues that, contrary to the disjunctive language in 308A.056(1)(b), the legislature intended the statute to retain its prior conjunctive language. Since 1999, when the statutory scheme was reorganized in its present location, the provision at issue has read "[f]eeding, breeding, managing *or* selling[.]" *See* 1999 Or Laws, ch 314, § 3 (emphasis added). Prior to 1999, the definition of farm use was located in ORS 215.203(2)(a). *See* ORS 215.203(2)(a) (1997) (containing the language "[f]eeding, breeding, managing *and* selling" (emphasis added)). The definition in ORS 215.203(2)(a) for zoning purposes in the year at issue still contained the word "and." ORS 215.203(2)(a) (2009). The legislative history reflects that the definition taken from the zoning statute for use in the special assessment statute was "intended to be 'identical to the definition in the land use statutes.'" *Youngblood v. Dept. of Rev.*, 16 OTR 23, 27 (2002) (quoting Minutes, Senate Revenue Committee, SB 248, Mar 15, 1999, Ex 5 (Lizbeth Martin-Mahar, Economist, Legislative Revenue Office)).

It is true that the legislature may have intended the "or" to be an "and." However, the court will not rewrite the express language of the statute. *Halperin v. Pitts*, 352 Or 482, 495, 287 P3d 1069 (2012) (internal citations omitted) ("Legislative history may be used to identify or resolve ambiguity in legislation, not to rewrite it."). The court does not read *Youngblood* as requiring any contrary result. In *Youngblood*, the taxpayers argued that their hunting reserve qualified for farm use special assessment, which did not qualify under the zoning definition from which the special assessment definition was derived, but as to which the latter definition was silent. 16 OTR at 25-27. This court held that hunting was not a qualifying farm use under the special assessment definition in part because the legislature did not intend to change the farm use definition for special assessment purposes when it created ORS chapter 308A. *Id.* at 27-28. However, the court did not attempt to rewrite the statute to effectuate that legislative intent as would be required here.[11]

Because use of land for beekeeping expressly qualifies as a farm use under the statute, and at least one of the enumerated activities occurred on each acre of the subject land as established at trial, the court finds that the third requirement is met.

Thus, taxpayers have satisfied their burden of showing that Old Sol's activities qualify as farm use under ORS 308A.056.

Finally, in order to benefit from the special assessment, taxpayers must show that their land is used "exclusively" for their qualifying farm use. ORS 308A.062. The department asserts that taxpayers' daughter's use of the subject property for grazing hobby animals disqualifies the land on which the animals grazed. However, this court has held that the word "exclusively" in the context of ORS 308.370(2), the predecessor to ORS 308A.068, means "primarily." *Jensen v. Dept. of Rev.*, 13 OTR 6, 6-9 (1994) (quoting

---

[11] For example, the result in *Youngblood* would undoubtedly have been different if the special assessment definition had specifically authorized hunting as a qualifying farm use while it was disallowed under the zoning statute, even if that change had been due to a scrivener's error.

*Willamette Univ. v. Tax Com.*, 245 Or 342, 344-345, 422 P2d 260 (1966)). While that statute concerns non-EFU land, the relevant language of the two provisions was, for the year at issue in *Jensen* as well as the year at issue here, identical: used "exclusively for farm use." *See* ORS 308.370(1), (2) (1993); ORS 308A.062; ORS 308A.068. That interpretation makes sense when the two provisions are read together: they provide that land must be used "exclusively" for "the primary purpose of obtaining a profit in money[.]" ORS 308A.056(1); ORS 308A.062(1). Any secondary use allowed under ORS 308A.056 would otherwise automatically disallow it under ORS 308.062.

Here, the court finds that Old Sol's use was primary, and taxpayer's daughter's use for grazing hobby animals was secondary. Thus, taxpayer has met its burden under the exclusivity requirement. Therefore, taxpayer's use qualifies under ORS 308A.062.

## V.   CONCLUSION

Now, therefore,

IT IS THE DECISION OF THIS COURT that the disqualified acreage qualifies for farm use special assessment; and

IT IS FURTHER DECIDED that costs shall be awarded to neither party.